# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 25, 2014 Session

## STATE OF TENNESSEE v. MARVIN HAROLD DORTON, II

**Appeal from the Criminal Court for Greene County**
**No. 10CR428     John F. Dugger, Jr., Judge**

---

**No. E2013-01580-CCA-R3-CD - Filed August 11, 2014**

---

The Defendant-Appellant, Marvin Harold Dorton, II, was charged with two counts of sale or delivery of a Schedule II controlled substance (counts 1 and 2), possession of a Schedule IV controlled substance with the intent to sell or deliver (count 3), and possession of a Schedule II controlled substance with the intent to sell or deliver (count 4). A Greene County Criminal Court jury convicted the Defendant-Appellant as charged, and the trial court sentenced him as a Range I, standard offender to concurrent sentences of six years for each of his convictions in counts 1 and 2, four years for his conviction in count 3, and six years for his conviction in count 4, for an effective sentence of six years in confinement. On appeal, the Defendant-Appellant argues: (1) the trial court erred in failing to instruct the jury in all four counts on the inference of casual exchange pursuant to Tennessee Code Annotated section 39-17-419; (2) the trial court erred in failing to instruct the jury in counts 1 and 2 on the lesser included offense of casual exchange pursuant to Code section 39-17-418(a); (3) the evidence is insufficient to sustain his convictions in counts 3 and 4 because the State failed to prove that he possessed the drugs found in a safe; and (4) his sentence is excessive. Upon review, we remand the case for entry of corrected judgments in counts 1, 2, 3, and 4 to reflect that the trial court resentenced the Defendant-Appellant on May 3, 2013, after the presentence investigation report was amended, even though the Defendant-Appellant's sentence did not change from the original sentence imposed. In all other respects, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed; Case Remanded for Entry of Corrected Judgments**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS and ROGER A. PAGE, JJ., joined.

Bryce W. McKenzie (on appeal), Sevierville, Tennessee, and Francis X. Santore, Jr. (at trial), Greeneville, Tennessee, for the Defendant-Appellant.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy E. Wilber, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Cecil Clayton Mills, Jr. and Ritchie Collins, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

**Trial.** Mike Fincher, a detective sergeant with the Criminal Investigations Division of the Greene County Sheriff's Department, testified that on July 1, 2010, he conducted surveillance of a business, the "11E Furniture and Gift Shop," after receiving "numerous complaints" that drugs were being sold out of the business. Detective Fincher stated that the aforementioned business looked more like "an apartment with what appeared to be a . . . poker operation in the back." A garage, which contained tools and vehicles, was attached to the side of the business.

Shortly after Detective Fincher began his surveillance, he saw a small, four-door vehicle park in front of the business. A man exited the vehicle and went inside the business "for close to a minute" before coming back out quickly and getting inside the vehicle. The vehicle left the area by driving behind the business and traveling down a side road that emptied onto the main road a short distance away. Based on his training and seventeen years of experience in law enforcement, Detective Fincher believed that he had just witnessed a drug transaction.

Detective Fincher followed the vehicle and when he observed it weaving, he turned on the blue lights of his unmarked vehicle on Asheville Highway and stopped the vehicle. Upon approaching the vehicle, Detective Fincher spoke to Jody Tarlton, the driver, Chasta Tarlton, his wife, and Mark Tarlton, Jody Tarlton's cousin. He asked Jody and Chasta Tarlton to accompany him to the Greene County Sheriff's Department to "talk further." Once they arrived, Detective Fincher told the Tarltons that he believed they were drug users, and the Tarltons eventually admitted that they were addicted to drugs. The Tarltons subsequently agreed to make "controlled buys of narcotics" at the 11E Furniture and Gift Shop.

On July 9, 2010, Detective Fincher had the Tarltons conduct a controlled drug buy at this business after searching them and their car. He placed a recording device in Chasta Tarlton's purse, and he gave the Tarltons sixty dollars, which had been photocopied, for use in the controlled buy. The Tarltons entered the business, and Detective Fincher parked across the street so that he could listen to the drug transaction.

-2-

Detective Fincher heard Jody Tarlton purchase a pill, later identified as oxycodone, from a man named Glen standing outside the building. When the Tarltons entered the building, he heard them making "small talk" with the Defendant-Appellant. He also heard the Defendant-Appellant tell Glen that his father would not appreciate Glen selling pills in front of the business. The Tarltons then purchased two pills from the Defendant-Appellant. After the Tarltons exited the business, they met Detective Fincher and another detective a short distance away and gave Detective Fincher two light blue pills, later identified as oxycodone, wrapped in a cellophane wrapper.

On July 17, 2010, Detective Fincher called the Tarltons and requested that they make a second controlled drug buy from the 11E Furniture and Gift Shop. Detective Fincher searched the Tarltons, placed a recording device in Chasta Tarlton's purse, and gave them sixty-five dollars, which had been photocopied, for the controlled buy. Because the audio recording of the controlled buy was difficult to understand, Detective Fincher recorded his interview with the Tarltons about the details of this second controlled buy. During this meeting, Jody Tarlton gave Detective Fincher two more blue pills that were wrapped in a cellophane wrapper. Detective Fincher said that he gave the Tarltons twenty dollars for gas money and a thirty-five-dollar phone card to call the Defendant-Appellant and that these items were "the extent of their payment."

On July 19, 2010, Detective Fincher obtained a search warrant for the building, vehicles, and persons at the 11E Furniture and Gift Shop. Upon entering the business, he saw a loveseat, a bar with a television on it, and a kitchen area with an island. To the left of that room was another room that appeared to be a bedroom and/or office that contained a bed, a desk, a safe, and some electronics. Near this bedroom was a large room with a poker table, refrigerator, and some recliners. A second bedroom, a bathroom, and some storage rooms were adjacent to the large room. A loaded nine-millimeter semi-automatic handgun was found on the bed in the second bedroom.

When the officers forcibly opened the safe, they found jewelry, watches, receipts, miscellaneous papers, medication bottles, cash banded together, benefit security cards belonging to three different individuals, and a wallet belonging to the Defendant-Appellant's father, Marvin Dorton, Sr. This wallet contained cash, credit cards, and business cards from pain clinics in Georgia and Florida and pharmacies in Florida. A piece of paper containing handwritten addresses of pharmacies in Florida was also in the safe. In addition, the officers found a piece of notebook paper, appearing to be a "drug ledger," in the safe. At the top of this ledger was written "Total money Gave pops." At the top of another column was written "Gave pops money." The ledger contained a list of over thirty transactions to individuals who had paid certain amounts of money for "2['s]," "15's," and "30's." Detective Fincher stated that the numbers on this ledger were consistent with 2 milligram doses of Xanax, also

known by the generic name of alprazolam, and 15 and 30 milligram doses of oxycodone. The officers found a total of $9,511 in cash in the safe and the wallet in the safe. In addition, the officers found five empty pill bottles from the safe; one bottle was prescribed to Milburn Norton, a second bottle was prescribed to Leah Cox, a third bottle was prescribed to Leah Pruitt, and the last two bottles were prescribed to "Marvin Dorton." The officers also found four prescription bottles, two that contained oxycodone pills, one that contained 210 generic oxycodone pills, also known as Roxicodone, and one that contained 90 Roxicodone pills. Some of the "buy money" from the July 19, 2010 controlled buy was recovered from the Defendant-Appellant's father at the time of the father's arrest.

When the officers searched the second bedroom, they found four empty prescription bottles in a locked cabinet in the bedroom. These pill bottles for oxycodone and Xanax were prescribed to Davene Dodson.

Detective Fincher stated that the Defendant-Appellant was present at the business when the search warrant was executed. The officers found three pill bottles containing oxycodone and Xanax on the Defendant-Appellant's person at the time of his arrest. One of these bottles contained 70 white pills, the second bottle contained 82 green pills, and the third bottle contained 160 blue pills. All three of these bottles were prescribed to the Defendant-Appellant, "Marvin Dorton, II." Moreover, the Defendant-Appellant's wallet, which was taken from him at the time of his arrest, contained two pharmacy cards from Florida, appointment cards from a medical clinic and pain clinic in Florida, a card from Enterprise Rent-A-Car, and several hotel rewards cards. The officers also found a "ledger" in the Defendant-Appellant's wallet containing the names of different individuals, amounts of money, and numbers added to or subtracted from the original numbers for food, gas, etcetera.

On cross-examination, Detective Fincher acknowledged that he did not know whether the Defendant-Appellant had a legal prescription for the pills found in prescription bottles on his person at the time of his arrest. However, he said the amount of pills found in the bottles did not match the quantity of the actual prescription that had been filled. Detective Fincher also acknowledged that he did not know whether the items found at the business belonged to the Defendant-Appellant or the Defendant-Appellant's father. He said he did not know who wrote the ledger that was found in the Defendant-Appellant's wallet and did not know whether the loaded nine-millimeter handgun belonged to the Defendant-Appellant. He also admitted that he did not know whether the Defendant-Appellant had access to the safe at the business. He agreed that the Defendant-Appellant had never admitted to engaging in any illegal activities. Detective Fincher said he believed the two empty pill bottles prescribed to "Marvin Dorton" that were found in the safe belonged to the Defendant-Appellant's father rather than the Defendant-Appellant. He acknowledged that the

Defendant-Appellant had not rented the building where the 11E Furniture and Gift Shop was located.

David Holloway, a forensic chemist and a special agent with the Tennessee Bureau of Investigation, was declared an expert in the identification of controlled substances. Agent Holloway testified that 70 white tablets found in a prescription bottle on the Defendant-Appellant at the time of his arrest were alprazolam. He also testified that the 82 green tablets and the 160 blue tablets found on the Defendant-Appellant at the time of his arrest were oxycodone. Including the pills that were on the Defendant-Appellant's person at the time of his arrest, Agent Holloway identified 198.5 tablets of alprazolam, a Schedule IV controlled substance, and 1107 tablets of oxycodone, a Schedule II controlled substance, that were collected during the execution of the search warrant of the business.

Jody Tarlton, one of the confidential informants in this case, testified that he knew the Defendant-Appellant because he used to buy pills from him at 11E Furniture and Gift Shop. He stated that he had purchased "Roxies and Xanaxes" from the Defendant-Appellant over a period of several months. During the July 9, 2010 controlled buy, Mr. Tarlton bought one pill from a man outside the business and bought a second pill from the Defendant-Appellant who was inside the business. As soon as he and Chasta Tarlton left the business, he gave the pills to Detective Fincher. During the July 17, 2010 controlled buy, Mr. Tarlton entered the business and purchased two pills from the Defendant-Appellant. When he left the premises, he gave the two pills to Detective Fincher.

Mr. Tarlton acknowledged that he first met the Defendant-Appellant's father, Marvin Dorton, Sr., at his store in Mosheim in early 2010 when Dorton, Sr. was dating Tarlton's ex-wife's sister, Davene Dodson. He agreed that Dodson could have left some pill bottles prescribed to her in the Defendant-Appellant's custody. Mr. Tarlton said he first bought pills from Dorton, Sr., a week after he met him and usually bought four Roxicodone pills for $100 every day. He acknowledged that Chasta Tarlton would travel with Dorton, Sr., to Florida once a month to obtain at least 800 Roxicodone or Xanax pills. Mr. Tarlton admitted telling Detective Fincher that hundreds of people bought pills from Dorton, Sr. He also informed Detective Fincher that the Defendant-Appellant sold Roxicodone and Xanax pills and would often travel to Florida to obtain pills from the pain clinics there. Mr. Tarlton said that he would only buy Roxicodone or Xanax pills from the Defendant-Appellant when Dorton, Sr., was out of town and that he had bought pills from the Defendant-Appellant approximately a dozen times.

Chasta Tarlton, another confidential informant in this case, testified that she and Jody Tarlton, her husband at the time, agreed to tell officers "what all was going on" at the 11E Furniture and Gift Shop in exchange for the charges against her husband being dropped. Ms.

Tarlton stated that she used to travel to Florida once a month for the Defendant-Appellant's father, Marvin Dorton, Sr. She and several other individuals would travel to Florida, stay at a motel, and would go the doctor the following day, where they would get prescriptions for oxycodone and Xanax. When they returned to Tennessee, they would give Dorton, Sr. an amount of pills equal to the amount of money he had given them at the beginning of the trip. On a few occasions, she had seen the Defendant-Appellant helping count the pills that belonged to his father. She also remembered the Defendant-Appellant's driving to Florida in a different vehicle the very first time she traveled to Florida for Dorton, Sr. She explained that the Defendant-Appellant had a "different [appointment] date than [she] did for the clinic."

On July 9, 2010, Ms. Tarlton went with her then-husband to the 11E Furniture and Gift Shop to purchase pills. She said that a man at the front of the business sold her husband one pill and when they entered the business, her husband bought a second pill from the Defendant-Appellant, "little Marvin," because "big Marvin," the Defendant-Appellant's father, was not there yet. At the time of this controlled buy, she was addicted to pills and would buy one to two pills every day. Whenever she wanted to buy a pill, she would go see "little Marvin and big Marvin," but she usually went to "big Marvin." Initially, she was paying $20 per pill, but then the price increased to $25 per pill. She stated that although she knew she was present during the second controlled buy with the Defendant-Appellant on July 17, 2010, she did not remember any details from that incident.

The Defendant-Appellant, who was forty-one years old at the time of trial, testified that he had a wife, six children, and six grandchildren and had worked as an auto mechanic since he was sixteen. He said he had "very little contact" with his father until he was thirty-nine years old. In early 2009 or late 2008, his father called to inform him that he was going to the hospital because he was having a heart attack. His father asked him to sit with him in the hospital, and the Defendant-Appellant agreed, ultimately sitting with him for nearly two weeks. After his father's heart attack, he said he was back and forth "between [Greenville] and Sevierville" for approximately a year.

The Defendant-Appellant stated that his father rented the building where the 11E Furniture and Gift Shop was located and that his name did not appear on the rental agreement. He said that although he had slept in one of the bedrooms inside the business, it was not his bedroom. He also said that the loaded semi-automatic handgun was not his gun and that he had never seen the gun before. The Defendant-Appellant claimed that all the things taken from the locked filing cabinet in the business belonged to his father and that he had never had access to the locked safe at the business.

The Defendant-Appellant said he was unable to identify the handwriting on the alleged "drug ledger" found in the safe that referenced money given to "Pops" and listed several individuals that had given money for "2['s]," "15's," and "30's." He asserted that the handwriting on this "ledger" was not his own. The Defendant-Appellant stated that the handwriting on a piece of notebook paper containing addresses of pharmacies in Florida was his father's handwriting. In addition, he said that the paper found in his wallet containing the names of different individuals, amounts of money, and numbers added to or subtracted from the original numbers for food, gas, etcetera was not in his handwriting, and he was unable to identify the individual who had written that information.

The Defendant-Appellant said the "Simple Savings Card" in his wallet was a prescription card that his wife had "downloaded" from the internet to help him save money on a prescription for "amoxicillin." He also said he had a card in his wallet for a doctor he had seen in Florida. He said he had gotten the business card from Enterprise Rent-A-Car when a friend had rented a car from that company and that he had gotten a LaQuinta Hotel rewards card when he and his wife had taken vacations. He denied knowing where the "Sunshine Wellness Center" card had come from because he had never been there. The Defendant-Appellant said that Jessica A. Lee's "Benefit Security Card" was in his wallet because he had found it lying on the ground in the parking lot and believed that someone from the hair salon next door had accidentally dropped it. He acknowledged that it was strange that three other benefit security cards had been found in the locked safe inside the business. He said his father had given him the Enterprise Plus card to make it easier if he ever needed to rent a car. The Defendant-Appellant said that he had gotten the Best Western Rewards Card in order to save twenty percent on his hotel room.

The Defendant-Appellant said he had three valid prescription bottles from Florida on his person at the time he was arrested. One of the bottles contained 30 milligram pills of oxycodone, the second bottle contained 15 milligram pills of oxycodone, and the third bottle contained Xanax. He said that none of the other prescriptions bottles that were found at the scene belonged to him. He denied hearing his voice on either of the recordings made from the July 9, 2010 and July 17, 2010 controlled drug buys and denied selling or delivering drugs to anyone on those dates. On cross-examination, the Defendant-Appellant admitted that it was his voice on the recording from July 9, 2010, stating that his father wouldn't like Glen selling pills outside his business. He also admitted seeing Jody Tarlton on July 9, 2010.

Following deliberations, the jury convicted the Defendant-Appellant of two counts of sale or delivery of a Schedule II controlled substance, one count of possession of a Schedule IV controlled substance with the intent to sell or deliver, and one count of possession of a Schedule II controlled substance with the intent to sell or deliver.

**Sentencing Hearing.** At the sentencing hearing, the State admitted the Defendant-Appellant's presentence report but did not call any witnesses and did not make any argument to the court. The defense also did not call any witnesses but argued that two mitigating factors applied, namely that the Defendant-Appellant's conduct neither caused nor threatened serious bodily injury and that he played a minor role in the commission of the offense. See T.C.A. § 40-35-113(1), (4). The defense also argued that the Defendant-Appellant's criminal history was relatively minor because it consisted of only misdemeanors.

The trial court declined to apply the mitigating factor that the Defendant-Appellant's conduct neither caused nor threatened serious bodily injury "because of the amount of the drugs involved" and because "there were deliveries involved." The court noted that in the last year more individuals had overdosed on prescription pills than had been killed in car accidents, for a total of "more than 1100 in Tennessee." It added that nearly every month it was marking individuals off the docket because they had overdosed and died, which showed that the abuse of controlled substances was "a very serious problem." The court also declined to apply the mitigating factor that the Defendant-Appellant played a minor role in the commission of the offenses because the proof at trial showed he went to Florida to obtain the prescription pills and was "heavily involved" in the drug trafficking operation based on the items found in his wallet, which included a ledger and hotel information.

The court applied the enhancement factor that the Defendant-Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish his range. See id. § 40-35-114(1). Specifically, the court noted that the Defendant-Appellant had been convicted of driving on a revoked license, telephone harassment, vandalism, misdemeanor assault, and a probation violation. The court also applied the enhancement factor that the Defendant-Appellant possessed or employed a firearm during the commission of the offenses because a handgun was found on a bed inside the business. See id. § 40-35-114(9). In addition, it also applied the enhancement factor that the Defendant-Appellant had no hesitation in committing a crime when the risk to human life was high. See id. § 40-35-114(10). The court noted that the "pills [involved in this case] are deadly," which was "proven by the number of people that are overdosing and dying[.]"

The trial court acknowledged that every defendant should be punished by a sentence "justly deserved in relation to the seriousness of the offense," which "assure[s] fair and consistent treatment of all defendants by eliminating unjustified disparity in the sentence[.]" See id. § 40-35-102(1), (2). The court also noted that sentences "needed to provide an effective deterrent to those likely to violate the criminal laws of this state" because "people need to be deterred from these delivery and possession [cases involving] large amounts of pills with the intent to deliver because of the effects that they're having on our society." See

-8-

id. § 40-35-102(3)(A). The court said that drugs were "driving the court's docket on thefts, burglaries, forgeries" and "murder cases."

The trial court found that confinement was necessary to avoid depreciating the seriousness of the offense because "[d]ealing these scheduled drugs and possessing large amounts of these drugs with the intent to deliver is very serious." See id. § 40-35-103(1)(B). It also found that confinement was particularly suited to providing an effective deterrent to others. See id. The court noted that it had handled 2,446 cases in the last year and that "a large percentage of those involv[ed] controlled substances." It also acknowledged that the sentence should be "no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." See id. § 40-35-103(2), (4).

The trial court acknowledged that the Defendant-Appellant had a wife and children and had worked as a mechanic until 2010, around the time that he was arrested for the charges in this case. It also acknowledged that the Defendant-Appellant had some health problems including lower back pain, right hip problems, a defective heart valve, rheumatoid arthritis, bacterial endocarditis, and a tendency for infections. However, the court said that the evidence at trial showed that the Defendant-Appellant and his father "were going to Florida and financing other people to go to Florida and they were getting large amounts of pills[.]" It also said "there were a lot of pills involved with this case and multiple trips to the State of Florida for the purpose of bringing back these pills, and there were actually deliveries, where the informant that purchased pills testified."

The court held that the Defendant-Appellant could not be rehabilitated based on the evidence offered at trial and sentencing. It said that the Defendant-Appellant admitted that he had been prescribed these pills in Florida and that it was unsure whether he was continuing to take these pills or whether he had stopped taking them. It also noted that the Defendant-Appellant had been convicted of multiple misdemeanors and that the Defendant-Appellant's convictions in this case involved a large number of pills, which indicated that he was a poor candidate for rehabilitation.

The court also held that a sentence of probation would unduly depreciate the seriousness of the offenses because the crimes involved a large number of pills. When considering whether confinement was particularly suited to providing an effective deterrent to others likely to commit this offense, the court noted that the jury was obviously "really upset" with the Defendant-Appellant because it had set fines totaling $270,000 in this case. The court believed the jury was upset because of the large number of pills recovered in this case and because of the Defendant-Appellant's involvement in bringing the pills back from Florida.

At the conclusion of the hearing, the court sentenced the Defendant-Appellant as a Range I, standard offender to concurrent sentences of six years in count 1, six years in count 2, four years in count 3, and six years in count 4.

## ANALYSIS

**I. Inference of Casual Exchange.** The Defendant-Appellant contends that the trial court erred in failing to instruct the jury on the inference of casual exchange in Tennessee Code Annotated section 39-17-419. Regarding counts 1 and 2, he asserts that "[t]he small amount of drugs and the familiarity of the parties create enough evidence of casual exchange to mandate that the second sentence of Code section 39-17-419 be instructed." Regarding counts 3 and 4, which relate in part to the drugs found in the safe, he asserts "[t]he instruction on casual exchange certainly could have influenced the jury's determination regarding whether the Defendant had control over or intended to distribute the items found in his father's safe." He admits that he failed to request the instruction on the inference of casual exchange in writing but asserts that because he is challenging an erroneous charge, he preserved the issue for appellate review when he included it in his motion for new trial. The Defendant-Appellant cites State v. Helton, 507 S.W.2d 117 (Tenn. 1974), State v. Timothy Wayne Grimes, No. 2001-01460-CCA-R3-CD, 2002 WL 31373472 (Tenn. Crim. App. Oct. 16, 2002), and State v. Grady Paul Gatlin, No. M2000-02356-CCA- R3-CD, 2001 WL 1117682 (Tenn. Crim. App. Sept. 25, 2001), to support his contention that the trial court erred in failing to instruct the jury on the inference of casual exchange in this case.

The inference of casual exchange is located in the second sentence of Tennessee Code Annotated section 39-17-419:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

T.C.A. § 39-17-419 (Supp. 2011) (emphasis added).

In Helton, 507 S.W.2d at 118, the Tennessee Supreme Court considered whether the trial court should have instructed the jury on the two inferences in Tennessee Code Annotated section 52–1432(a)(2), the precursor to Code section 39-17-419 that contained nearly identical language. The defendant, who had been convicted of the sale of heroin, argued at trial that he was only guilty of the offense of casual exchange because at the time of his arrest he was merely returning the unused portion of heroin and obtaining a refund because the drugs had made him ill. Id. at 118-119. At trial, the defendant asked the court to instruct the jury on both of the inferences in Code section 52–1432(a)(2), or alternatively, to instruct the jury on the second inference in Code section 52–1432(a)(2). Id. at 119. Although the court refused to give either charge, it did instruct the jury that it could consider whether the transaction was a casual exchange, a misdemeanor offense, if the drugs were not possessed for the purpose of sale. Id. In considering whether the trial court erred in failing to instruct on these two inferences, the court explained the circumstances under which the inferences in Tennessee Code Annotated section 52–1432(a)(2) should be given:

> The first sentence . . . deals exclusively with a situation in which controlled substances are [p]ossessed by a seller and makes no reference whatever to an actual sale. The second sentence of said subsection deals with a situation in which a small amount of a controlled substance is exchanged. Said second sentence clearly evinces a legislative purpose to declare that in a case involving the exchange of a small amount, plus 'circumstances indicating a casual exchange among individuals,' that the jury may find defendant guilty of the lesser included offense of mere possession without intent to sell.

> The inference declared in the first sentence is for the benefit of the State, a quantity of the drug (inferentially large), together with other relevant facts surrounding the arrest, indicating the commission of the felony. The inference declared in the second sentence is for the benefit of the defendant, the small quantity of the drug, together with circumstances indicating a casual exchange among individuals, suggesting the commission of only the lesser offense of possession.

Id. at 120. The court stated that "[t]rial judges must determine from the evidence in each case whether it is appropriate to charge the first sentence, the second sentence, or both." Id. It added that the "charging of the appropriate inference or inferences is mandatory, because of the use of the word 'shall' in the third sentence of subsection (a)(2)." Id. (citations omitted). Noting that the defendant's case involved a small amount of heroin, the court held that "if there are any circumstances indicating a casual exchange among individuals, defendant was entitled to have the trial judge charge the exact language of the second sentence of T.C.A. [section] 52–1432(a)(2)." Id. The court said the trial court's reference

to the offense of casual exchange in its jury instructions indicated a recognition that evidence at trial supported a finding by the jury that the transaction was a casual exchange. Id. at 121. However, the trial court's instruction failed to direct the jury to place any weight on the amount of drugs involved in the transaction, which Code section 52–1432(a)(2) required. Id. Ultimately, the court concluded that because the evidence at trial "constitute[d] circumstances indicating a casual exchange" the trial court was required "to charge the exact language of the second sentence of T.C.A. [section] 52–1432(a)(2)," and the court's failure to do so was reversible error. Id. The court also concluded that based on the evidence presented at trial, the court was not required to charge the first inference in Code section 52–1432(a)(2). Id.

In Timothy Wayne Grimes, 2002 WL 31373472, at *1, the defendant was convicted of possession of a Schedule IV controlled substance with intent to deliver. On appeal, the defendant argued that the trial court erred in failing to instruct the jury regarding the lesser included offenses of simple possession and casual exchange. Id. This court held that simple possession was a lesser included offense of possession with intent to deliver and that the trial court should have instructed the jury on this offense pursuant to Code section 40-18-110(a) (amended 2001), even though the defense had not requested it. Id. at *6. However, it held that because casual exchange was not a lesser included offense of possession with intent to deliver, the trial court did not err in failing to instruct the jury on the offense of casual exchange. Id. Despite this, the court held that the trial court should have instructed the jury on the inference of casual exchange as set out in Tennessee Code Annotated section 39-17-419. Id. The court concluded that the jury could have reasonably inferred from evidence of a letter from the defendant to the inmate that the defendant and inmate were friends, that the defendant had not sent the inmate the pill as a part of his drug operation, and that the defendant did not have the felonious intent to deliver a controlled substance to the inmate. Id. This court explained, "If the jury were to make an inference of casual exchange, the defendant would only be subject to a conviction for simple possession." Id. at *7. Consequently, the court held that under the circumstances of this particular case and as mandated by Code section 39-17-419, the court erred in failing to instruct on the inference of casual exchange, even though the defendant did not request it. Id. Moreover, it held that based on the evidence presented in this case and the relationship between the offense of simple possession and the casual exchange inference, it could not conclude that the trial court's failure to instruct on the offense of simple possession and the inference of casual exchange was harmless beyond a reasonable doubt. Id.

In Grady Paul Gatlin, 2001 WL 1117682, at *1, the defendant was convicted of possession with intent to sell a Schedule IV controlled substance, possession with intent to sell a Schedule II controlled substance, possession of drug paraphernalia, and conspiracy to possess with intent to sell a Schedule II controlled substance. The defendant appealed,

arguing that it was plain error for the trial court not to instruct the jury on the lesser included offense of casual exchange. Id. The court concluded that casual exchange was a lesser included offense of possession of a controlled substance with intent to sell. Id. at *7-8; contra State v. Nelson, 275 S.W.3d 851, 865 (Tenn. Crim. App. 2008) (stating that casual exchange is not a lesser included offense of possession of a controlled substance with intent to sell (citing State v. Timothy Wayne Grimes, 2002 WL 31373472, at *6)). After applying the plain error test, the Gatlin court concluded that the trial court's failure to instruct the jury on the offense of casual exchange constituted plain error. Grady Paul Gatlin, 2001 WL 1117682, at *6. The court also concluded that the trial court's failure to instruct on the inference of casual exchange may have impacted the defendant's conviction for conspiracy to possess a controlled substance with intent to sell. Id. at *9. It noted that although one of the witnesses testified that he made fifteen to twenty trips to the defendant's hotel room to purchase pills from the defendant, "the jury could have determined that each trip involved a casual exchange of a small amount of a controlled substance between friends in a party type environment and that the Defendant lacked the intent to sell controlled substances." Id. The court reasoned that if the jury found that the defendant's deliveries of drugs were casual exchanges, it might have rejected the State's theory that the defendant conspired to possess drugs with the intent to sell. Id. The court reached the following conclusion:

> Based on the record before us, we cannot say that the failure of the trial court to instruct the jury on the offense of casual exchange and the inferences to be made from evidence of a casual exchange was harmless beyond a reasonable doubt as to the offense of conspiracy to possess a controlled substance with intent to sell. While it may not be highly probable that the jury would have convicted of the lesser offense, we believe that it is reasonably possible that it would have done so.

Id. The court reversed the defendant's convictions for possession of controlled substances with the intent to sell and his conviction for conspiracy to possess a controlled substance with the intent to sell and remanded the case for a new trial on those offenses. Id. at *10.

In the Defendant-Appellant's case, the trial court instructed the jury on the first inference in Code section 39-17-419 but inadvertantly failed to instruct the jury on the inference of casual exchange. After reviewing the record in this case, we conclude that an instruction on the casual exchange inference was inappropriate in counts 1 and 2. Although the offenses in counts 1 and 2, the sale or delivery counts, involved a small amount drugs, there were no circumstances indicating a casual exchange between individuals. See Helton, 507 S.W.2d at 120. Instead, the evidence presented at trial showed that the Defendant-Appellant was a key player in a drug trafficking operation that was being conducted out of the store front for 11E Furniture and Gift Shop. The search warrant of the business revealed

-13-

drug ledgers, thousands of oxycodone pills, hundreds of Xanax pills, pill bottles prescribed to several different individuals, addresses of pain clinics in Florida and Georgia and pharmacies in Florida, and thousands of dollars. The evidence established that the Tarltons had purchased drugs from both the Defendant-Appellant and the Defendant-Appellant's father at their place of business numerous times prior to conducting the controlled drug buys constituting the offenses in counts 1 and 2. Jody Tarlton testified that he had bought Roxicodone and Xanax pills from the Defendant-Appellant at least a dozen times in the past and that the Defendant-Appellant would often travel to Florida to obtain pills from the pain clinics there. Chasta Tarlton testified that she used to travel to Florida with other individuals once a month for the Defendant-Appellant's father, Marvin Dorton, Sr., and that she would give Dorton, Sr., an amount of pills equal to the amount of money he had given her at the beginning of the trip. Ms. Tarlton said she had seen the Defendant-Appellant help count the pills that belonged to his father. She also said that the very first time she went to Florida, the Defendant-Appellant had driven to Florida in a different vehicle for the purpose of obtaining prescriptions for oxycodone and Xanax pills. Nothing in the Tarltons' testimony regarding the two controlled drug buys indicated that the pills were delivered to them by the Defendant-Appellant for any reason other than to perpetuate the elaborate drug trafficking operation. Cf. Helton, 507 S.W.2d at 120 (stating that the purpose of the casual exchange inference was to allow the jury to find the defendant guilty of the lesser included offense of mere possession without the intent to sell if the case involved a small amount of drugs and the circumstances indicated a casual exchange among individuals); Timothy Wayne Grimes, 2002 WL 31373472, at *6 (concluding that the jury could have reasonably inferred from evidence of a letter from the defendant to the inmate that the defendant and inmate were friends, that the defendant had not sent the inmate the pill as a part of his drug operation, and that the defendant did not have the felonious intent to deliver controlled substance to the inmate). In each of the controlled buys, the Tarltons' interaction with the Defendant-Appellant was brief and limited to purchasing the pills. Although the Tarltons knew the Defendant-Appellant, there was no indication that the Tarltons were friends with the Defendant-Appellant or that the Defendant-Appellant was giving the pills to them because of their friendship. Cf. Grady Paul Gatlin, 2001 WL 1117682, at *9 (asserting that although a witness made several trips for pills, the jury could have found that each trip "involved a casual exchange of a small amount of a controlled substance between friends in a party type environment"). Therefore, we conclude that it was not appropriate for the trial court to charge the inference of casual exchange in counts 1 and 2 based on the evidence in this case. See id.

We also conclude that an instruction on the casual exchange inference was inappropriate in counts 3 and 4 because these counts did not involve a small amount of a controlled substance and because there were no circumstances indicating a casual exchange between individuals. See Helton, 507 S.W.2d at 120. Here, the Defendant-Appellant had

-14-

on his person at the time of his arrest 70 tablets of Xanax and 242 tablets of Xanax in two different doses and in two different pill bottles. Although these pills were in pill bottles prescribed to the Defendant-Appellant, Detective Fincher stated that the amount of the pills found in the bottles did not match the quantity of the prescription that had been filled. Additionally, inside the Defendant-Appellant's wallet, officers found two pharmacy cards from Florida, appointment cards from a pain clinic in Florida, a business card from Enterprise Rent-A-Car, hotel reward cards, and a ledger containing the names of individuals, amounts of money, and numbers added to or subtracted from the original numbers for food or gas, etcetera. The officers also found an additional 128.5 Xanax pills and 865 oxycodone pills inside a locked safe inside the business. Although the Defendant-Appellant claimed that he did not have access to the safe where these additional pills were found, a drug ledger with notes about "Total money Gave pops" and "Gave pops money" and listing over thirty transactions to individuals was found in the safe. Based on this evidence, a jury could have reasonably inferred that the Defendant-Appellant had written the notes referencing his father on the drug ledger and had access to the safe as a part of the drug trafficking operation. Cf. Grady Paul Gatlin, 2001 WL 1117682, at *9 (concluding that the inference of casual exchange should have been instructed because the jury could have inferred that the facts indicated a casual exchange of drugs in a party-like atmosphere and that the defendant lacked the intent to sell controlled substances). Because there were no circumstances indicating a casual exchange among individuals in counts 3 and 4, the trial court did not err in failing to instruct the jury regarding this inference.

Moreover, even if the trial court erred in failing to instruct on the inference of casual exchange in counts 1 through 4, we conclude that the error was harmless beyond a reasonable doubt. See Timothy Wayne Grimes, 2002 WL 31373472, at *7; Grady Paul Gatlin, 2001 WL 1117682, at *9. In counts 1 and 2 the jury was instructed on the lesser included offenses of facilitation of delivery, simple possession, and attempted simple possession. In counts 3 and 4, the jury was instructed on the lesser included offenses of attempted possession, facilitation of possession, and simple possession. Despite being instructed on these lesser included offenses, the jury convicted the Defendant-Appellant of each of the charged offenses. Even if the trial court had instructed on the inference of casual exchange, the jury would not have been allowed to consider any of the lesser included offenses, including the offense of simple possession, without acquitting the Defendant-Appellant of the immediately-preceding greater offense:

> [W]here a criminal defendant is entitled to jury instructions on lesser-included offenses, the trial court shall instruct the jury to consider the offenses in order from greatest to least within each count of the indictment and that it shall not proceed to consider any lesser-included offense until it has first made a

unanimous determination that the defendant is not guilty of the immediately-preceding greater offense.

State v. Davis, 266 S.W.3d 896, 910 (Tenn. 2008). In this case, the jury found the Defendant-Appellant guilty of each of the offenses charged, and the jury was precluded from considering any of the lesser included offenses. Accordingly, we conclude that even if the trial court erred in failing to instruct on the inference of casual exchange, the error is harmless beyond a reasonable doubt.

**II. Casual Exchange as a Lesser Included Offense.** The Defendant-Appellant also argues that the trial court erred in failing to instruct the jury in counts 1 and 2, the sale or delivery counts, of the lesser included offense of casual exchange. Although he acknowledges that he failed to request an instruction on the offense of casual exchange, he argues that the court's failure to instruct on this offense constitutes plain error. We conclude that the Defendant-Appellant waived this issue because he failed to file a formal request for this instruction at trial and that the court's failure to instruct on this lesser included offense does not rise to the level of plain error.

It is well-recognized that "a defendant has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000) (citing State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990)). Consequently, it is the trial court's duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986) (citing State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975)). Because the propriety of jury instructions is a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. Carpenter v. State, 126 S.W.3d 879, 892 (Tenn. 2004); State v. Smiley, 38 S.W.3d 521, 524 (Tenn. 2001).

We initially recognize that casual exchange is a lesser included offense of the charged offense of sale or delivery of a controlled substance. State v. Benjamin Patterson and Charles P. Yokley, No. M2009-01516-CCA-R3-CD, 2011 WL 4436630, at *4 (Tenn. Crim. App. Sept. 26, 2011), perm. app. denied (Tenn. Mar. 7, 2012); State v. Edward P. Harris, No. 01C01-9810-CR-00392, 2000 WL 19536, at *3 (Tenn. Crim. App. Jan. 13, 2000). The Defendant-Appellant's trial took place on May 8, 2012. Therefore, jury instructions on lesser included offenses were governed by Tennessee Code Annotated section 40-18-110, which provides, in pertinent part:

(a) When requested by a party in writing prior to the trial judge's instructions to the jury in a criminal case, the trial judge shall instruct the jury as to the law of each offense specifically identified in the request that is a lesser included

offense of the offense charged in the indictment or presentment. However, the trial judge shall not instruct the jury as to any lesser included offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of evidence. The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

(b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any lesser included offense charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, the lesser included offense instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

T.C.A. § 40-18-110(a)-(c) (Supp. 2011) (emphasis added). This statute clearly states that a defendant may not present an issue on appeal regarding the failure to instruct on a lesser included offense unless he or she requested the instruction in writing prior to trial. Here, the Defendant-Appellant concedes that he failed to make such a request. Therefore, the issue is waived on appeal unless it constitutes plain error. State v. Page, 184 S.W.3d 223, 230 (Tenn. 2006); State v. Henry Wayne Russell, No. M2013-00166-CCA-R3-CD, 2014 WL 1704953, at *24 (Tenn. Crim. App. Apr. 29, 2014); State v. David A. Mantey, No. E2006-00143-CCA-R3-CD, 2008 WL 238446, at *6 (Tenn. Crim. App. Jan. 29, 2008), perm. app. denied (Tenn. Aug. 25, 2008).

The plain error doctrine states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In order for this court to find plain error,

"(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not

-17-

waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "It is the accused's burden to persuade an appellate court that the trial court committed plain error." State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing U.S. v. Olano, 507 U.S. 725, 734 (1993)). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Smith, 24 S.W.3d at 283.

At the motion for new trial hearing, the trial court stated that he normally charged the offense of casual exchange as a lesser-included offense of the sale or delivery of a controlled substance and that he inadvertantly omitted it from the charge in this case. However, after considering the evidence presented at trial, the court asserted that the offense of casual exchange should not have been charged because there was "nothing about this case that was without design."

The offense of casual exchange is defined by Tennessee Code Annotated, which provides: "It is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." T.C.A. 39-17-418(a). This court has concluded that the offense of casual exchange "contemplates a spontaneous passing of a small amount of drugs, for instance, at a party" and noted that "[m]oney may or may not be involved." State v. Copeland, 983 S.W.2d 703, 708 (Tenn. Crim. App. 1998). In addition, this court has held that "[a] casual exchange occurs when the transfer of the controlled substance is made without design." State v. Carey, 914 S.W.2d 93, 96 (Tenn. Crim. App. 1995) (citing Helton, 507 S.W.2d at 120).

We conclude that the offense of casual exchange does not contemplate the kind of transaction established by the proof in this case. See Edward P. Harris, 2000 WL 19536, at *3). Here, the evidence of the Defendant-Appellant's guilt of the charged offenses in counts 1 and 2 was substantial. The evidence at trial showed that the Defendant-Appellant was a key player in a drug trafficking operation. Officers found drug ledgers, thousands of oxycodone pills, hundreds of Xanax pills, pill bottles belonging to several different individuals, addresses of pain clinics in Florida and Georgia and pharmacies in Florida, and thousands of dollars inside the business. The Tarltons testified that they had purchased drugs from both the Defendant-Appellant and the Defendant-Appellant's father at their place of business numerous times prior to the controlled drug buys in this case. Jody Tarlton stated

that he had bought Roxicodone and Xanax pills from the Defendant-Appellant at least a dozen times in the past. Chasta Tarlton testified that she had seen the Defendant-Appellant helping count the pills that belonged to his father. She also said that the Defendant-Appellant had driven to Florida in a different vehicle the very first time she went to Florida for the oxycodone and Xanax pills. In each of the controlled buys, the Tarltons' interaction with the Defendant-Appellant was brief and limited to purchasing the pills. The record does not indicate that the Defendant-Appellant had any motive other than a pecuniary one for delivering the drugs to the confidential informants in this case. See State v. Prince, 713 S.W.2d 914, 918 (Tenn. Crim. App. 1986) (concluding that there was "no mention of friendship or any other motive for the transfer [of drugs] except money"); State v. Michael Moore, No. 02C01-9705-CR-00180, 1997 WL 703343, at *1 (Tenn. Crim. App. Nov. 13, 1997) (stating that no proof indicated that the defendant had any motive other than pecuniary gain for the transfer of cocaine), perm. app. denied (Tenn. July 13, 1998). The evidence presented at trial, which established that the Defendant-Appellant intended to deliver the drugs in this case, does not support a jury instruction on casual exchange. See State v. Elder, 982 S.W.2d 871, 877 (Tenn. Crim. App. 1998) (asserting that no jury instruction need be submitted when there is no evidence in the record to support the instruction); Edward P. Harris, 2000 WL 19536, at *3 (concluding that the trial court did not err in declining to instruct on the offense of casual exchange when the record reflected "nothing less than the sale of cocaine"). Because the evidence does not support a jury instruction on casual exchange, the Defendant-Appellant has failed to establish that a substantial right of the accused was adversely affected or that consideration of the error is necessary to do substantial justice. Accordingly, he has failed to establish plain error.

**III. Sufficiency of the Evidence.** The Defendant-Appellant contends that the State presented insufficient evidence that he possessed 1000 tablets of oxycodone and 100 tablets of alprazolam with the intent to sell or deliver as alleged in counts 3 and 4 of the indictment. Specifically, he claims the State failed to establish that he had access to the safe where most of these pills were found. See State v. Kilpatrick, 327 S.W.3d 64, 68 (Tenn. Crim. App. 2010) (stating that the mere presence of an individual in an area where drugs are found is insufficient to prove constructive possession). We conclude that the evidence presented at trial was sufficient to sustain the Defendant-Appellant's convictions in counts 3 and 4.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789

(1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

The Defendant-Appellant in this case was charged in count 3 with possession of more than 100 tablets of alprazolam, a Schedule IV controlled substance, with the intent to sell or deliver and in count 4 with possession of more than 1000 tablets of oxycodone, a Schedule II controlled substance, with the intent to sell or deliver. Pursuant to Tennessee Code Annotated section 39-17-417(a)(4), it is an offense for a person to knowingly possess a controlled substance with intent to manufacture, deliver, or sell the controlled substance. We note that a person may possess contraband alone or jointly with others. State v. Richards, 286 S.W.3d 873, 885 (Tenn. 2009) (citations omitted); Copeland, 677 S.W.2d at 476. In addition, "[p]ossession [of drugs] may be actual or constructive." State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citing State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)). Constructive possession is established when a person knowingly has "'the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting United States v. Craig, 522 F.2d 29, 32 (6th Cir. 1975)). It has also been defined as "'the ability to reduce an object to actual possession.'" Id. (quoting United States v. Martinez, 588 F.2d 495, 498 (5th Cir. 1979)). Constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. Robinson, 400 S.W.3d at 534. The mere presence of a person in an area where drugs are found is not, by itself, sufficient to support a finding that the person constructively possessed

the drugs. Id. (citing State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000)). In addition, an individual's mere association with a person in control of the drugs or the property where the drugs are found is not enough to support a finding of knowing possession. Id. (citing State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)).

The Defendant-Appellant argues that the State presented no evidence that he had access to the safe and provided no proof connecting him to the pills in the safe. To support this contention, he cites to Detective Fincher's admission that he did not know whether any pills other than those found on the Defendant-Appellant's person belonged to the Defendant-Appellant and that he did not know whether the Defendant-Appellant had access to the safe. The Defendant-Appellant also contends that no other testimony showed that he had access to the safe where some of the pills referenced in counts 3 and 4 were found.

At trial, Detective Fincher testified that he arrested the Tarltons when they were leaving the 11E Furniture and Gift Shop. He convinced them to act as confidential informants and eventually set up two controlled drug buys that resulted in Jody Tarlton buying one oxycodone pill from the Defendant-Appellant on July 9, 2010, and two oxycodone pills from the Defendant-Appellant on July 17, 2010. Following these controlled buys, Detective Fincher obtained a search warrant for all persons and things at the 11E Furniture and Gift Shop. Upon execution of this search warrant, officers found a drug ledger, thousands of oxycodone pills, hundreds of Xanax pills, pill bottles prescribed to several different individuals, addresses of pain clinics in Florida and Georgia and pharmacies in Florida, and thousands of dollars. At the time of the Defendant-Appellant's arrest, he had 70 tablets of Xanax and 242 tablets of oxycodone in two different bottles and in two different dosage amounts on his person. Although these pills were in pill bottles prescribed to the Defendant-Appellant, Detective Fincher stated that the amount of the pills found in the bottles did not match the quantity of the prescriptions that had been filled. In addition, the Defendant-Appellant's wallet contained two pharmacy cards from Florida, appointment cards from a pain clinic in Florida, a business card from Enterprise Rent-A-Car, hotel reward cards, and a ledger containing the names of individuals, amounts of money, and numbers added to or subtracted from the original numbers for food or gas, etcetera, all of which constituted strong circumstantial evidence that the Defendant-Appellant possessed the drugs on his person with the intent to sell or deliver them. The officers also found an additional 128.5 Xanax pills and 865 oxycodone pills inside a locked safe inside the business. Although the Defendant-Appellant claims that he did not have access to the safe where these additional pills were found, a drug ledger with notes about "Total money Gave pops" and "Gave pops money" and listing over thirty transactions to individuals was found in the safe. Based on this evidence, a jury could have reasonably inferred that the Defendant-Appellant had written the notes referencing his father on the drug ledger and that the Defendant-Appellant had access to the safe as a part of the drug trafficking operation. Given the large quantity of

drugs recovered from both the Defendant-Appellant's person and the safe, a rational jury could have found that the Defendant-Appellant possessed these drugs with the intent to sell or deliver them. See T.C.A. § 39-17-419. Affording the State the strongest legitimate view of the evidence, we conclude that there is sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that the Defendant-Appellant had actual possession of the drugs found on his person and, at a minimum, had constructive possession of the drugs found in the safe. Therefore, the evidence is sufficient to sustain his convictions in counts 3 and 4.

**IV. Sentencing.** Finally, the Defendant-Appellant argues that the trial court abused its discretion in sentencing him to the maximum sentence in the range for each of his convictions. He contends that because the trial court erred in applying enhancement factors (9) and (10), his sentences should be modified to a sentence of four years' probation, despite the fact that he provides no authority or argument to support a sentence of probation. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); Tenn. R. App. P. 27(a)(7) (A brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on."). Although we agree that the trial court erroneously applied enhancement factors (9) and (10) in this case, we uphold the within-range sentences of confinement because the sentences otherwise comply with the purposes and principles of the sentencing act.

We note that the 2005 amendments to the sentencing act "served to increase the discretionary authority of trial courts in sentencing." State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). In light of this broader discretion, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Id. at 706. The amendments to the sentencing act also "rendered advisory the manner in which the trial court selects a sentence within the appropriate range, allowing the trial court to be guided by–but not bound by–any applicable enhancement or mitigating factors when adjusting the length of a sentence." Id. Because of this broader discretion,

> a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

Id. Accordingly, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. This abuse of discretion standard of review also applies to a trial court's decision regarding "probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d), Sentencing Comm'n Cmts. In determining the proper sentence, the trial court must consider the defendant's potential for rehabilitation or treatment. Id. §§ 40-35-102, -103. In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

The Defendant-Appellant argues that the trial court abused its discretion in erroneously applying enhancement factors (9) and (10) prior to sentencing him to the maximum sentence in the range for each of his convictions. Specifically, he contends that the trial court improperly applied enhancement factor (9), that he possessed or employed a firearm during the commission of the offense, because there was no proof presented at trial indicating that the firearm was used in his alleged drug operation. See id. § 40-35-114(9). He also contends that the trial court erroneously applied enhancement factor (10), that he had no hesitation about committing a crime when the risk to human life was high, because the court did not find that there was an actual harm other than the inherent harmful nature of the drugs. See id. § 40-35-114(10). We agree that enhancement factor (9) was improperly applied by the trial court because there was no proof presented that the Defendant-Appellant

possessed or employed a firearm during the commission of the offenses in this case. See State v. James Michael Scott, No. M2001-02000-CCA-R3-CD, 2002 WL 31154603, at *4 (Tenn. Crim. App. Sept. 20, 2002) (concluding that the trial court erred in applying enhancement factor (9) to the offense of burglary because no evidence established that the defendant "possessed or employed a weapon while gaining entry into the victim's home"); State v. Daniel Christian Russell, No. M1999-00202-CCA-R3-CD, 2000 WL 1130125, at *8 (Tenn. Crim. App. July 27, 2000) (holding that enhancement factor (9) should not have been applied to the defendant's conviction for vandalism because no evidence showed that the defendant possessed the weapon during the commission of this offense). We also agree that enhancement factor (10) was improperly applied by the trial court. See State v. Keel, 882 S.W.2d 410, 421-22 (Tenn. Crim. App. 1994) (concluding that enhancement factor (10) should not be used to enhance a sentence due to the "nature and circumstances" of the controlled substance because the legislature considered the inherent nature of each drug in its setting of punishment according to the different schedules).

Even though the trial court erroneously applied these two enhancement factors, the Defendant-Appellant is not entitled to relief. As we previously noted, the court's misapplication of enhancement factors does not invalidate its within-range sentence unless the court wholly departed from the sentencing act. Bise, 380 S.W.3d at 706. Here, the court properly applied the enhancement factor that the Defendant-Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Before sentencing the Defendant-Appellant to the maximum sentence in the range for each conviction, the court said it was extremely concerned about the impact of drugs in its district, noted that drugs were "driving the court's docket on thefts, burglaries, forgeries" and "murder cases," and asserted that "people need to be deterred from these delivery and possession [cases involving] large amounts of pills with the intent to deliver because of the effects that they're having on our society." In addition, based on the proof presented at trial, the court found that the Defendant-Appellant was "heavily involved" in the drug trafficking business because he and his father "were going to Florida and financing other people to go to Florida and they were getting large amounts of pills[.]" The court also noted that the Defendant-Appellant had made deliveries of these pills, as testified to by the confidential informants. Because the Defendant-Appellant's sentences are within the appropriate range and because the record shows that the sentences otherwise comply with the purposes and principles of the sentencing act, we affirm the sentences imposed in this case.

**CONCLUSION**

The case is remanded for entry of corrected judgments in counts 1, 2, 3, and 4 to reflect that the trial court resentenced the Defendant-Appellant on May 3, 2013, after the

presentence investigation report was amended.  In all other respects, the judgments of the trial court are affirmed.

_____

CAMILLE R. McMULLEN, JUDGE