STATE of Tennessee, Petitioner,

v.

Johnny HELTON, Respondent.

Supreme Court of Tennessee.

March 18, 1974.

**118**

David M. Pack, Atty. Gen., of Tenn., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, for petitioner.

John F. Dugger, Morristown, for respondent.

## OPINION

FONES, Justice.

Defendant, Johnny Helton, was found guilty of selling heroin and sentenced to five years in the penitentiary. The Court of Criminal Appeals reversed the trial judge and remanded the case for a new trial. The State petitioned for and we granted certiorari.

The question presented is the proper interpretation and application of T.C.A. § 52–1432(a)(2), a subsection of the Tennessee Drug Control Act of 1971, wherein the Legislature has prescribed two inferences that "shall" be transmitted to the jury by the trial judge's charge.

The facts, essentially, are these:

The Chief of Police in Morristown had employed a special officer to work as an undercover agent as part of an effort to deal with the drug traffic problem in Hamblen County. The Police Chief testified that he told said officer to make friends with Eddie Allison, because Allison knew all persons involved in narcotics in the County, and was an informer. The Chief did not advise Eddie Allison that the special officer was an undercover agent.

Defendant testified that he and Allison had known each other in the Boy Scouts and that, after defendant returned from military service and was having marital problems, Allison approached him one day and asked him if he wanted to smoke some marijuana. He testified that he purchased marijuana from Allison on a number of occasions. The offense for which defendant was tried occurred on October 13, 1971. Defendant testified that four or five days prior to said date he went to Allison's trailer to buy some marijuana. Allison did not have any marijuana but said he had something else, and sold defendant three packages, at the rate of $10.00 each. Allison opened one of the packages, used one-half to administer a "hit" to defendant and one-half to "hit" himself. Defendant paid him $25.00 and took two packages with him.

Defendant further testified that approximately twenty minutes after he arrived at his home, he became sick from his first use of the drug; that two days later he went back to Allison's with the two packages and told him that he wanted his money back, but Allison had no money at that time; that on October 13, he saw Allison at the poolroom, where they made arrangements to meet at Jack's around 7:00 o'clock; at that meeting, Allison only had $10.00, for which defendant gave him one package and kept the other; that later that night he saw Allison on the west side of town and arrangements were made to meet again at Jack's, where Allison stated that he had someone who wanted a package and Allison would give $10.00 and two marijuana cigarettes for it. Defendant met Allison and the third person, who was the special officer, at Jack's, where defendant exchanged the package for $10.00 and two marijuana cigarettes.

Defendant also testified that he had never bought heroin from anyone except Allison, and only on the one occasion; that he had never used it on any other occasion, and that he had never sold any drug and was not in the business of selling drugs of any kind. The record reflects that no one knew the whereabouts of Eddie Allison at the time of the trial and the defendant's testimony, with respect to his transactions with Allison, is uncontradicted.

It was the theory of defendant that he was returning the merchandise and obtaining a refund because he did not want to use it, and that said transaction was "a casual exchange" within the contemplation of the Legislature in enacting T.C.A. § 52–1432(a)(2). That portion of T.C.A. § 52–1432 relevant to this case is as follows:

"52–1432. *Criminal penalties.*—(a) Except as authorized by §§ 52–1408—52–1448, it is unlawful for any person to manufacture, deliver, sell or possess with intent to manufacture, deliver or sell, a controlled substance.

(1) Any person who violates this subsection with respect to:

(A) a controlled substance classified in schedule I is guilty of a felony and upon conviction shall be imprisoned for not less than five (5) years nor more than fifteen (15) years and in addition thereto may be fined not more than eighteen thousand dollars ($18,000);

.   .   .   .   .   .

(2) It may be inferred from the amount of controlled substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of controlled substances that the controlled substances so exchanged were possessed not with the purpose of selling or otherwise dispensing them in violation of the provisions of subsection (a) of this section. Such inferences shall be transmitted to the jury by the trial judge's charge and the jury will consider such inferences along with the nature of the substance possessed when affixing the penalty.

.   .   .   .   .   .

(b) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by §§ 52–1408—52–1448.

(1) Any person who violates this subsection shall be guilty of a misdemeanor and, upon first conviction, be sentenced to confinement in a county jail or workhouse for a period not to exceed eleven (11) months, twenty-nine (29) days and/or fined an amount not to exceed one thousand dollars ($1,000) or may have the sentence pending upon him for this violation suspended and may as a condition of the suspension be required to participate in a program of rehabilitation at a drug treatment facility operated by the state or a comprehensive community mental health center."

Defendant requested that the trial judge charge, verbatim, the words of T.C.A. § 52–1432(a)(2), except the last sentence directing that such inferences shall be transmitted to the jury by the charge, or in the alternative, to charge the second sentence of said subsection. The trial court declined to give either charge as requested but, instead, charged, inter alia, as follows:

"   .   .   .

It is for the jury to determine from the proof whether defendant sold or possessed the substance for the purpose of sale. If he did, and if the proof so shows beyond a reasonable doubt, then he is guilty of the felony.

And you may consider whether the transaction was a casual exchange and was possessed not for the purpose of sale.

And if he did, then such transaction would constitute a misdemeanor.

There (sic) are matters for the jury to determine from all the proof.

. . .."

The Court of Criminal Appeals held that the failure to charge the first two sentences of subsection (a)(2) was reversible error.

The State insists that the Legislature did not intend the words "casual exchange" to include a transaction in which money was given for a controlled substance. The trial court observed during a colloquy, out of the presence of the jury, as follows:

"I don't think the law was intended to cover cases where they exchanged some money. I think that where friends get together and just sort of divide it up among themselves the law takes part in it; however, . . ."

First, it should be observed that T.C.A. § 52–1432 prohibits (1) the sale, and (2) possession with intent to sell a controlled substance in subsection (a) and prohibits the possession of a controlled substance in subsection (b). A violation of subsection (a) is a felony. A violation of subsection (b) is a misdemeanor. The offense of possession, prohibited in subsection (b), is a lesser included offense to that prohibited in subsection (a).

The first sentence of T.C.A. § 52–1432(a)(2) deals exclusively with a situation in which controlled substances are *possessed* by a seller and makes no reference whatever to an actual sale. The second sentence of said subsection deals with a situation in which a small amount of a controlled substance is exchanged. Said second sentence clearly evinces a legislative purpose to declare that in a case involving the exchange of a small amount, plus "circumstances indicating a casual exchange among individuals," that the jury may find defendant guilty of the lesser included offense of mere possession without intent to sell.

The inference declared in the first sentence is for the benefit of the State, a quantity of the drug (inferentially large), together with other relevant facts surrounding the arrest, indicating the commission of the felony. The inference declared in the second sentence is for the benefit of the defendant, the small quantity of the drug, together with circumstances indicating a casual exchange among individuals, suggesting the commission of only the lesser offense of possession.

■ Trial judges must determine from the evidence in each case whether it is appropriate to charge the first sentence, the second sentence, or both. In each case, charging of the appropriate inference or inferences is mandatory, because of the use of the word "shall" in the third sentence of subsection (a)(2). See Rounds v. State, 171 Tenn. 511, 106 S.W.2d 212 (1937); Louisville & Nashville R.R. Co. v. Hammer, 191 Tenn. 700, 236 S.W.2d 971 (1951), and Ussery v. Avery, 222 Tenn. 50, 432 S.W.2d 656 (1968).

The transaction in this case obviously involved a small amount of heroin. It follows that if there are any circumstances indicating a casual exchange among individuals, defendant was entitled to have the trial judge charge the exact language of the second sentence of T.C.A. § 52–1432(a)(2).

■ Exchange means to part with, give or transfer in consideration of something received as an equivalent. Casual means without design. See Webster's Third International Unabridged Dictionary. While these are not exclusive definitions, we consider them the most apt in the context in which they are used in the statute. In our opinion, it was not the intention of the Legislature that the words "casual exchange" should exclude a transaction in which money is involved. They

could have said so in unequivocal language, and to place such a restrictive interpretation on said phrase would, in our opinion, largely defeat the purpose inherent in the second sentence.

The trial judge charged the jury that, "You may consider whether the transaction was a casual exchange and was possessed not for the purpose of sale." That charge indicates a recognition that there was evidence adduced in the case that would support a finding by the jury that the transaction was a casual exchange. But, there was nothing in the trial judge's charge directing the jury to place any weight whatsoever on the quantity of the drug involved in the transaction, which is one of the mandates of the statute.

There is evidence in the record that Allison was both an addict and a drug peddler. There is evidence that Helton was a user and that he was neither an addict nor a drug peddler. There is evidence that he carried away from Allison's trailer two small packages for his own use and that, after becoming ill from the "hit" administered by Allison, his sole purpose was to obtain a refund of the exact purchase price from the original seller. In our opinion, said evidence constitutes circumstances indicating a casual exchange, and it thus became mandatory for the trial judge to charge the exact language of the second sentence of T.C.A. § 52–1432(a)(2). His failure to do so is reversible error. It was not mandatory nor appropriate to charge the first sentence of said subsection, under the evidence adduced in this case.

The opinion of the Court of Criminal Appeals is modified as indicated herein and the case is remanded to the Criminal Court of Hamblen County for a new trial.

DYER, C. J., CHATTIN and Mc-CANLESS, JJ., and LEECH, Special Justice, concur.