Victor Lynn LOVEDAY, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Sept. 3, 1976.

William P. Biddle, III, Athens, for appellant.

R. A. Ashley, Jr., Atty. Gen., Jack E. Seaman, Asst. Atty. Gen., Nashville, Richard A. Fisher, Dist. Atty. Gen., Cleveland, for appellee.

## OPINION

TATUM, Judge.

Appellant was convicted in McMinn County for violation of T.C.A. 52–1432 of the Tennessee Drug Control Act. There are three cases. In case number 67 in this court, appellant was convicted of selling schedule I drugs and sentenced to 10 years in the State Penitentiary. In case number 68 in this court, he was convicted of delivering schedule I drugs and sentenced to 10 years. In case number 69, he was charged and convicted of possession for resale of a schedule II drug, misdemeanor, and he was fined $1,000.00. The Trial Judge ordered the two 10-year sentences to run concurrently and did not impose a jail sentence in the misdemeanor case.

Appellant was a Deputy Sheriff of McMinn County. He worked "undercover" from May of 1973 until July, 1973. While working undercover, he became acquainted with one Gale Toney who was also an "undercover" officer in 1973.

In August, 1975, Toney renewed his acquaintance with appellant and appellant asked Toney if he was interested in making some easy money selling drugs. Toney reported this to T.B.I. agents and ultimately was appointed a deputy sheriff for the sheriff of Monroe County, in order to investigate appellant.

With the assistance of T.B.I. agents, several telephone calls and personal conversations between Toney and appellant were recorded. During these conversations, appellant discussed his plans to procure drugs to sell to Toney.

By prior arrangement, Toney went to appellant's apartment on September 16, 1975 and purchased drugs classified as schedule I, schedule II and schedule III from appellant, agreeing to pay $230.00 for the same and actually making a payment of $200.00 to appellant with money that had been furnished to him by T.B.I. agents. The denominations of the bills and serial numbers had been previously recorded. Toney was to pay the remaining $30.00 later.

On September 23, 1975, Toney again met with appellant and procured small quantities of several drugs, including LSD and cocaine for which appellant was to pay when he repaid the $30.00 owing on the first transaction. Appellant and Toney agreed to meet the next day and appellant was going to take Toney to Chattanooga to meet with one Richard Rose about another possible drug transaction.

After appellant's arrest, he consented that T.B.I. agents search his apartment. A search was conducted that resulted in discovery of additional drugs which was the basis of the misdemeanor (possession) case.

When arrested, appellant admitted to the arresting officers that on two occasions he had given drugs to Toney, but he denied accepting any money from Toney. He told the officers that he in fact had given $30.00 of his own money to Toney.

Appellant did not testify but introduced the Sheriff of McMinn County to testify on his behalf. The Sheriff testified that after July, 1973, appellant did not work as an undercover agent, but continued to work in his department in charge of narcotics. The sheriff testified that appellant told him that Toney was working as an undercover agent and needed drugs and that he told appellant that if Toney needed drugs in connection with his work, to give them to him. The sheriff knew nothing about appellant receiving $200.00 for the drugs.

When Toney first renewed his acquaintance with appellant in August, 1975, Toney was not working as a police officer in any capacity. After the first conversation between appellant and Toney, Toney reported to the T.B.I. appellant's offer to sell him drugs and was subsequently appointed a deputy sheriff of Monroe County and in this capacity he worked "undercover" in this case. Toney did not advise appellant that he was working undercover as a police officer, but told him that he desired to purchase drugs for resale. There is no evidence that appellant actually knew that Toney was working in an undercover capacity.

Appellant charges that he was denied due process and equal protection of the law and a fair and impartial trial.

■ Appellant explains in his brief that he has reference to evidence in the record relating to "other crimes". In answer to a question as to why the witness, Toney, was appointed deputy sheriff for Monroe County, the sheriff of Monroe County testified, "We had information that there was a contract out on a Judge—". Appellant's counsel objected and the Court sustained the objection. There was nothing here connecting the "contract out on a judge" with appellant. Subsequently, the witness, Toney, made the statement that he and appellant, "talked about me killing a man". This referred only to Toney killing a man and not appellant. Appellant objected to this testimony and the objection was promptly sustained by the Trial Judge. The court remarked on sustaining both of these objections that this was not a proper matter to consider and that it did not affect that case. Conversations relating to "other matters" were deleted and not read to the jury. Appellant admits that the Trial Judge did all within his power to prevent the injection of these irrelevant matters and we think the Trial Judge succeeded in doing so and the brief references were insufficient to inform the jury of any other criminal activity on the part of appellant. The Attorney General made references to other matters under investigation. All of these statements were very vague and did not affect the verdict to the prejudice of the appellant. *See, Harrington v. State,* 215 Tenn. 338, 385 S.W.2d 758 (1965). Assignment Number I is overruled.

Appellant says that he was entitled to a directed verdict based on the provisions of T.C.A. 52–1444(c):

"52–1444. *Evidence, burden of proof — Immunity from liability, law enforcement officers in performance of duties.*—(c) No liability is imposed by §§ 52–1408—52–1448 upon any authorized state, county or municipal officer, engaged in the lawful performance of his duties."

■ T.C.A. 52–1444(a) places the burden of proof on appellant to show that these transactions come within 52–1444(c). Appellant has not born this onus. Appellant must prove that he was an authorized officer and also that he was engaged in the lawful performance of his duties.

■ Appellant relies upon the testimony of his principal, the sheriff of McMinn County. The sheriff's testimony does not support appellant's theory. The sheriff testified that appellant told him that he had an operation going and implied that Mr. Toney was involved as an undercover officer and that he authorized appellant to *give* drugs to Toney to use in undercover operations. The record reflects that appellant was not aware that Toney was actually operating as an undercover officer, but that he told appellant that the drugs were to be resold. The sheriff was not aware that appellant had actually sold the drugs to Toney. The proceeds of the sale of the drugs were kept by appellant for his own personal use. The evidence is that appellant sold the drugs for personal gain and not in connection with his official duties. The evidence against appellant was very strong and it did not preponderate against the jury verdict. Assignment II is overruled.

Appellant next complains that the Trial Judge erred in the two felony cases in not including in his instructions to the jury T.C.A. 52–1432(a)(2). This charge was not requested by appellant.

The portion of T.C.A. 52–1432 relevant to these cases is as follows:

"52–1432. *Criminal penalties.*—(a) Except as authorized by §§ 52–1408—52–1448, it is unlawful for any person to manufacture, deliver, sell or possess with intent to manufacture, deliver or sell, a controlled substance.

(1) Any person who violates this subsection with respect to:

(A) a controlled substance classified in schedule I is guilty of a felony and upon conviction shall be imprisoned for not less than five (5) years nor more than fifteen (15) years and in addition thereto may be

fined not more than eighteen thousand dollars ($18,000);

(2) It may be inferred from the amount of controlled substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of controlled substances that the controlled substances so exchanged were possessed not with the purpose of selling or otherwise dispensing them in violation of the provisions of subsection (a) of this section. Such inferences shall be transmitted to the jury by the trial judge's charge and the jury will consider such inferences along with the nature of the substance possessed when affixing the penalty.

(b) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by §§ 52–1408—52–1448.

(1) Any person who violates this subsection shall be guilty of a misdemeanor and, upon first conviction, be sentenced to confinement in a county jail or workhouse for a period not to exceed eleven (11) months, twenty-nine (29) days and/or fined an amount not to exceed one thousand dollars ($1,000) or may have the sentence pending upon him for this violation suspended and may as a condition of the suspension be required to participate in a program of rehabilitation at a drug treatment facility operated by the state or a comprehensive community mental health center."

Appellant relies on *State v. Helton*, 507 S.W.2d 117 (1974). In that case, the Supreme Court, in construing said Code section, speaking through Justice Fones, said:

"The first sentence of T.C.A. § 52–1432(a)(2) deals exclusively with a situation in which controlled substances are *possessed* by a seller and make no reference whatever to an actual sale. The second sentence of said subsection deals with a situation in which a small amount of a controlled substance is exchanged. Said second sentence clearly evinces a legislative purpose to declare that in a case involving the exchange of a small amount, *plus* 'circumstances indicating a *casual exchange* among individuals,' that the jury may find defendant guilty of the lesser included offense of mere possession without intent to sell. The inference declared in the first sentence is for the benefit of the State, a quantity of the drug (inferentially large), together with other relevant facts surrounding the arrest, indicating the commission of the felony. The inference declared in the second sentence is for the benefit of the defendant. The small quantity of the drug, together with circumstances indicating a casual exchange among individuals, suggesting the commission of only the lesser offense of possession.

(1) *Trial judges must determine from the evidence in each case whether it is appropriate to charge the first sentence, the second sentence, or both.* In each case, charging of the appropriate inference or inferences is mandatory, because of the use of the word 'shall' in the third sentence of subsection (a)(2). (Citations omitted)

. . . Exchange means to part with, give or transfer in consideration of something received as an equivalent. *Casual means without design.*" (Emphasis supplied) 507 S.W.2d 117, at 120.

 The amount of drugs involved alone will not justify the reduction of an offense to mere possession without intent to sell. A casual exchange among individuals of a large amount of drugs will not reduce the offense. In order to reduce the offense to simple possession, it is required by T.C.A. 52–1432(a)(2) that there be "a casual exchange among individuals of a small amount of controlled substances . . . ." *State v. Helton, supra.*

As stated by the Supreme Court in *State v. Helton, supra,* there can be no casual exchange if there was a design or previous plan to make the exchange. The undisputed evidence was that appellant and Toney had previously planned the first exchange or sale by telephone and had previously agreed upon the price of the drugs. As a result of a pre-arranged meeting, appellant and Toney met again on September 23, 1975, at which time appellant delivered to Toney the drugs for which he was convicted in the delivery case. Toney was to pay for these when he paid the $30.00 still owing on the first transaction.

The drugs in both felony cases were delivered to Toney for the purpose of resale and both transactions were planned and previously designed according to all of the evidence.

The Trial Judge properly determined from the evidence in both felony cases that the charging of the second sentence of T.C.A. 52–1432(a)(2) was not appropriate. Since the evidence did not justify the charge concerning "casual exchange", there was no other evidence of simple possession insofar as the two felony cases are concerned and the Court did not err in failing to charge T.C.A. 52–1432(b)(1). Assignment of Error III is overruled.

The fourth assignment of error is that the Court erred in instructing the jury with reference to parole statutes as required by T.C.A. 40–2707. The Act amending T.C.A. 40–2707, the same being Section 2 of Chapter 163 of the Public Acts of 1973, requiring that Trial Judges charge juries in felony cases on parole procedure and allied matters was held to be unconstitutional by the Supreme Court of Tennessee in *Farris v. State,* Tenn., 535 S.W.2d 608 (1976). Appellant assigned this as ground in his supplemental motion for a new trial and has assigned this as error in this court. Under authority of *Farris v. State, supra,* we must sustain Assignment IV as to case number 67 and case number 68, the two felony cases. This assignment is not applicable to the misdemeanor case, number 69, wherein appellant was fined $1,000.00 and given no jail sentence. The two felony cases are remanded for the purposes hereinafter directed.

The indictment in the selling case (no. 67) charged appellant with selling schedule I, II, and III drugs and the indictment in the other felony case, number 68, charged appellant with delivering schedule I and II drugs. Appellant complains that the Trial Judge charged the jury only with respect to schedule I drugs under T.C.A. 52–1432(a)(1)(A) and did not charge the jury with respect to schedule II and schedule III substances under T.C.A. 52–1432(a)(1)(B)(C). Appellant relies upon 40–2518 requiring a jury charge as to all offenses included in an indictment.

The uncontradicted evidence was that appellant sold schedule I, II and III drugs in case number 67 and delivered schedule I and II drugs in case number 68.

By its verdict, the jury found the defendant guilty of selling and delivering schedule I drugs. The evidence was that these various classifications of drugs were sold at the same time in one case and delivered at the same time in the other. Schedule I drugs were included in both instances. There was no evidence or issue made to the contrary. The only issue for the jury was whether defendant was acting in the performance of his duties as a deputy sheriff. There was no basis for the jury to find one schedule of drugs set out in the indictments to be involved and not the other.

We do not think that under the facts, the Trial Judge was bound to charge the penalties for selling and delivering schedule II and schedule III drugs. *Bolin v. State,* 219 Tenn. 4, 405 S.W.2d 768 (1966); *Patterson v. State,* 218 Tenn. 80, 400 S.W.2d 743 (1966).

This assignment is not applicable to the misdemeanor case. Assignment V is overruled.

It results that we affirm the conviction in all three cases. In the two felony cases, number 67 and 68, we reduce the sentences

**828**

from 10 years to 5 years in each case if the State agrees. The sentences will run concurrently. In absence of the State's consent to reduction of these two sentences, then both of said felony cases are remanded to the Criminal Court of McMinn County, for the purpose of having a jury fix the punishments.

WALKER, P. J., and O'BRIEN, J., concur.