IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 13, 2015 Session

## STATE OF TENNESSEE v. ZIBERIA MARICO CARERO

**Appeal from the Criminal Court for Knox County**
**No. 101680     Steven Wayne Sword, Judge**

_____

**No. E2015-00140-CCA-R3-CD – Filed December 22, 2015**

_____

Defendant, Ziberia Marico Carero, was charged in a presentment by the Knox County Grand Jury in Count One with possession of cocaine in a school zone with intent to sell; in Count Two with possession of cocaine in a school zone with intent to deliver; in Count Three with sale of cocaine; and in Count Four with delivery of cocaine for his role in a sale of cocaine to a confidential informant. Defendant was also charged in Count Five with a criminal gang offense enhancement pursuant to Tennessee Code Annotated section 40-35-121. After a jury trial, Defendant was convicted of the charges in Counts One through Four. In a bifurcated trial, the jury found Defendant not guilty of the criminal gang offense enhancement. The trial court merged Count Two into Count One and merged Count Four into Count Three. The trial court sentenced Defendant to concurrent sentences of twenty-three years and eighteen years. On appeal, Defendant challenges the sufficiency of the evidence and his sentences. Defendant also argues that the trial court improperly refused to merge all four of the convictions into a single conviction. After a review of the record, we determine that the evidence was sufficient to support the convictions. However, we conclude that the multiple convictions violate double jeopardy principles and, therefore, should have been merged into one conviction for possession of cocaine in a school zone with the intent to sell. As a result, we merge all four convictions into Count One and remand the matter for entry of separate, corrected judgment forms for Counts One through Four in light of the supreme court's recent order in _State v. Marquize Berry_, No. W2014-00785-SC-R11-CD, 2015 WL _____ (Tenn. Nov. 16, 2015) (per curiam order).

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Modified in Part and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Forrest L. Wallace (on appeal) and Leslie M. Jeffress (at trial), Knoxville, Tennessee, for the appellant, Ziberia Marico Carero.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Tony Clark, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

This is Defendant's direct appeal from his jury trial convictions and sentences in Knox County for a drug transaction that occurred on September 10, 2011.

Francis Brady, a confidential informant for the Knoxville Police Department, participated in between 70 and 100 purchases of illegal drugs over a four-year period of time under the direction of Officer Michael Geddings. At the time of Defendant's trial, Ms. Brady had testified as a witness for the State in four cases.

On September 10, 2012, Ms. Brady met with Officer Geddings and placed a phone call to Defendant to arrange for the purchase of $100 worth of crack cocaine. Ms. Brady had "been around [Defendant] or seen him" at least "twenty to thirty times, maybe more." Ms. Brady arranged to meet with Defendant for the drug transaction. After the meeting was arranged, Officer Geddings searched Ms. Brady to verify that she was not in possession of drugs, money, or other contraband. The officer also took photographs of five, $20 bills that were to be used in the transaction. The serial numbers were recorded.

Defendant called Ms. Brady and changed the location of the meeting. Ms. Brady was to meet Defendant at "Teresa's apartment" on Scheel Road at Inskip Drive. Ms. Brady was familiar with the location of the apartment; she drove there in her car. Officer Geddings sat in the passenger seat. On the way to the meeting, Ms. Brady was fitted with a recording device.

Once they arrived at the apartment complex, Ms. Brady backed into a spot and called Defendant to let him know she had arrived at the meeting spot. While still on the phone with Ms. Brady, Defendant approached the parking lot on foot from an area between the parked car and Inskip Elementary School.

When Defendant arrived at the car, he walked around and opened the rear driver's-side door and got into the back seat. Ms. Brady introduced Officer Geddings as her brother-in-law and the person who would be providing the money for the drugs.

- 2 -

Defendant retrieved a clear baggie from the waistband of his pants. From inside that bag, he retrieved another bag containing crack cocaine. He handed the bag containing the drugs to Officer Geddings. Ms. Brady examined the contents of the bag and could tell that it was not $100 worth of crack cocaine. She complained to Defendant and asked him to show "some love" and "maybe add some to" the bag. At that time, Defendant added a few rocks from the bag he was holding to the bag he gave to Ms. Brady and Officer Geddings. Ms. Brady gave Defendant the money. Defendant exited the car.

When Ms. Brady and Officer Geddings started to pull out of the parking lot, someone nearby yelled out, "Man, he's the police." Defendant called Ms. Brady back on the phone and demanded that she "turn around because he wanted to see who was in the vehicle" with her. Officer Geddings instructed her to keep driving. Ms. Brady assured Defendant that he was not a police officer. She sent Defendant a picture of "an ID [which was] like a parole card. It's got [Officer Geddings's] picture on it." Ms. Brady felt like she "assured" Defendant that Officer Geddings was not a police officer.

Donna Roach, an employee at the Knoxville/Knox County Geographic Information Systems ("KGIS") testified as an expert in geographic information systems. A map was introduced into evidence that showed the location of Inskip Elementary School and a 1,000-foot buffer zone around the school. The map was accurate "up to one inch" per one hundred feet or ten inches per 1,000 feet. Ms. Roach testified that, in her opinion, the location at which Defendant was first spotted approaching the car was located within 1,000 feet of the school. Officer Geddings identified the location of Defendant when he was first spotted on the map as being within 1,000 feet of the school. Also, the officer identified the location of the parked car on the map as being located just outside the 1,000 feet school zone.

Defendant did not testify. At the conclusion of the trial, the jury found Defendant guilty of all four counts in the indictment and assessed a fine of $160,000 against Defendant. In a bifurcated portion of the trial, the jury found Defendant not guilty in Count Five, the criminal gang enhancement. The trial court approved the verdict and the fine as set by the jury.

The trial court held a separate sentencing hearing. At the hearing, Corrections Officer John Houck testified that Defendant was incarcerated in 2003. During an escort to a probationary disciplinary unit after a shower, Defendant attacked Officer Houck, hitting him in the back of the head and choking him with the chain that connected Defendant's handcuffs. As a result of the attack, Officer Houck sustained a bruise to the back of his head and a sore neck.

Officer Phillip Jinks of the Knoxville Police Department testified that he observed Defendant complete a drug transaction. During Defendant's arrest, Officer Jinks

witnessed Defendant attack several officers, even dragging one officer through the parking lot as he held on to Defendant's clothing. He also saw Defendant resist arrest after he dragged the officer through the parking lot.

Likewise, Deputy Jeremy Wise of the Knox County Sheriff's Department testified that when he was a corrections officer at the Knox County jail he witnessed Defendant punch a corporal in the face.

In 2003, Sergeant Mark Belliveau, Director of Communications for the Knox County Sheriff's Department, transported Defendant back to his cell after a visit with his attorney. Defendant attacked Sergeant Belliveau, rendering him unconscious. Sergeant Belliveau sustained a concussion and received eight stitches in his ear as a result of the attack.

The presentence report, entered into evidence, revealed a lengthy criminal history, including at least four convictions for casual exchange, a conviction for violating the sex offender registry, six assault convictions, an aggravated assault conviction, a conviction for criminal impersonation, and a conviction for statutory rape. In addition, Defendant had prior violations of probation and acknowledged his membership in the Vice-Lords gang.

The trial court merged Counts One and Two into a "single conviction for Class A felony possession with the intent to sell within a thousand feet of a school zone." Additionally, the trial court merged Counts Three and Four into a single conviction for sale of a controlled substance, a Class B felony. The trial court commented that there were "two separate convictions" because the elements "are actually different." Additionally, they occurred in "two different spots. The possession with the intent within the school zone and the actual sale and delivery he's stepped outside of that thousand foot school zone." As a result, Defendant was sentenced as a Range I, standard offender in Count One to twenty-three years. In Count Three, Defendant was sentenced as a Range II, multiple offender to eighteen years. The sentences were ordered to be served concurrently.

Defendant filed a motion for new trial, which was denied by the trial court after a hearing. On appeal, he argues: (1) that the evidence was insufficient; (2) that the trial court should have merged all four convictions into one conviction; and (3) that his sentence is improper.

*Analysis*

*I. Sufficiency of the Evidence*

- 4 -

Defendant argues on appeal that the evidence at trial "did not rise above that of casual exchange." Specifically, Defendant insists that "the social relationship between [Defendant and Ms. Brady], the small amount of drugs," and the lack of history regarding drug sales by Defendant support a conviction for casual exchange. Moreover, Defendant argues that the proof did not support the school zone enhancement because he was not within the school zone either before or during the drug transaction. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Furthermore, questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). This is because the jury has "the benefit of hearing witness testimony and observing witness demeanor." *State v. Robinson*, 400 S.W.3d 529, 533 (Tenn. 2013). As the Tennessee Supreme Court explained almost half a century ago:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). Therefore, "'[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d

651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id*.; *Dorantes*, 331 S.W.3d at 379.

Tennessee Code Annotated provides that it is an offense for a person to knowingly possess a controlled substance with intent to manufacture, deliver, or sell the controlled substance. T.C.A. § 39-17-417(a)(4). Additionally, under Tennessee Code Annotated sections 39-17-417(a)(2) and (a)(3), it is an offense to either knowingly deliver or sell a controlled substance. Cocaine is a Schedule II controlled substance. T.C.A. § 39-17-408. "Knowingly" is defined as when a person acts "with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). "A violation of § 39-17-417, . . . , that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park" results in enhanced punishment. T.C.A. § 39-17-432(b)(1). A defendant may be convicted under the Drug-Free School Zone Act if he was merely traveling through the school zone while in possession of controlled substances, even if he was arrested elsewhere. *See State v. Vasques*, 221 S.W.3d 514, 523 (Tenn. 2007). Possession of drugs within a drug-free school zone is not a separate offense or an essential element of the underlying drug offense—it merely enhances the penalty for violations of Tennessee Code Annotated section 39-17-417 that take place within a school zone. *See State v. Smith*, 48 S.W.3d 159, 168 (Tenn. Crim. App. 2000).

Defendant's attack on the sufficiency of the evidence is largely rooted in an attack on the credibility of the witnesses, which is squarely within the province of the jury. *Wagner*, 382 S.W.3d at 297 (quoting *Campbell*, 245 S.W.3d at 335). Moreover, it was up to the jury to decide whether Defendant's actions amounted to a casual exchange, something to be determined from the facts and circumstances of the case. *State v. Helton*, 507 S.W.2d 117, 120-21 (Tenn. 1974). The inference of casual exchange is located in the second sentence of Tennessee Code Annotated section 39-17-419:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). The inferences shall be transmitted to the jury by the trial judge's

charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

T.C.A. § 39-17-419. "A 'casual exchange' contemplates a spontaneous passing of a small amount of drugs, for instance, at a party. Money may or may not be involved." *State v. Copeland*, 983 S.W.2d 703, 708 (Tenn. Crim. App. 1998). A transaction will not be deemed a casual exchange if there was a design or previous plan to make the exchange. *State v. Carey*, 914 S.W.2d 93, 96 (Tenn. Crim. App. 1995); *Loveday v. State*, 546 S.W.2d 822, 826 (Tenn. Crim. App. 1976).

Taken in the light most favorable to the State, the evidence shows that Ms. Brady contacted Defendant and asked if he had cocaine to sell. Ms. Brady set up a buy at a prearranged location, informed Officer Geddings about the drug buy, and made arrangements to record the transaction. Ms. Brady was equipped with a recording device, searched, and travelled to the buy in her car with Officer Geddings, who was in possession of the $100 for the cocaine. Defendant called and changed the meeting location to Teresa's apartment, and Ms. Brady and Officer Geddings went to the location of the apartment. There, Defendant approached the parked car from a location within the school zone. Defendant got in the car, took a plastic bag containing another bag filled with cocaine from his waistband, and handed Officer Geddings a bag of cocaine. Ms. Brady complained about the quantity in the bag. Defendant added a few more rocks to the bag before the $100 changed hands. The transaction was recorded, and the State played the recording for the jury. Although Defendant claims that the transaction was a casual exchange, the jury could conclude from the evidence, particularly from Defendant's action of adding additional rocks to the bag of cocaine when Ms. Brady complained that Defendant was trying to provide less than the drugs were worth, that he knowingly delivered cocaine to Ms. Brady and Officer Geddings as part of a drug sale rather than a casual exchange. Moreover, Ms. Brady and Defendant made plans for the drug buy in advance and had agreed on a purchase price. As to the school zone enhancement, there was proof from both Officer Geddings and the map expert that Defendant approached the scene of the drug transaction from within the school zone. The jury could conclude, by Defendant's action of pulling the cocaine from his waistband when he got in the car, that he possessed the cocaine while he was inside the school zone walking toward the car. Therefore, the evidence is sufficient to support the convictions and the school zone enhancement, and Defendant is not entitled to relief.

## II. Double Jeopardy

Next, Defendant argues that the trial court erred by refusing to merge all of his convictions on double jeopardy grounds. The State claims that the trial court properly concluded that Defendant's actions constituted separate and distinct incidents and were properly punished as separate offenses.

At the sentencing hearing, counsel for Defendant argued that Defendant's actions were "all the same crime" and should be merged into a single conviction. The trial court refused, finding instead that Counts One and Two should be merged into one conviction for possession of cocaine with the intent to sell within a drug-free school zone and that Counts Three and Four should be merged into one conviction for the sale of cocaine. The trial court commented that the legislature had defined the offenses separately and, in Defendant's case, that the two offenses were separated by location.

The Double Jeopardy Clause of both the United States and the Tennessee constitutions guarantee that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10. The Double Jeopardy Clause provides three separate protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *abrogated on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). Whether multiple convictions constitute double jeopardy is a mixed question of law and fact, which this Court will review de novo without any presumption of correctness. *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014) (citing *State v. Thompson*, 285 S.W.3d 840, 846 (Tenn. 2009)).

To determine whether multiple convictions actually punish the same offense, we must apply the two-pronged test laid out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See Smith*, 436 S.W.3d at 767; *Watkins*, 362 S.W.3d at 556. "In a *Blockburger* analysis, our primary focus is whether the General Assembly expressed an intent to permit or preclude multiple punishments. If either intent has been expressed, no further analysis is required." *Smith*, 436 S.W.3d at 767 (internal citations omitted). In other words, if the legislature clearly intended to permit multiple punishments, then a defendant's multiple convictions do not violate double jeopardy principles. Similarly, if the legislature clearly intended to preclude multiple punishments, then a defendant's multiple convictions violate double jeopardy principles. It is only when the legislature's intent is unclear that we apply the "same elements test" from *Blockburger*.[1] *Smith*, 436 S.W.3d at 767.

In this case, Defendant contends that the trial court's refusal to merge his convictions implicates the third type of double jeopardy protection: protection against multiple punishments for the same offense. The Tennessee Supreme Court has divided

---

[1] "Under [the *Blockburger*] test, the first step is to determine whether the convictions arise from the same act or transaction. The second step is to determine whether the elements of the offenses are the same. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy." *Smith*, 436 S.W.3d at 767.

- 8 -

such claims into two categories: (1) unit-of-prosecution claims, "when a defendant who has been convicted of multiple violations of the *same* statute asserts that the multiple convictions are for the same offense"; and (2) multiple description claims, "when a defendant who has been convicted of multiple criminal offenses under *different* statutes alleges that the statutes punish the same offense." *Id.* (citing *Watkins*, 362 S.W.3d at 543-44) (emphasis in original). Defendant is raising a multiple description claim. *See id.* at 767 (analyzing different subsections of the same statute as different statutes for double jeopardy purposes). To address a multiple description claim, we must apply the two-pronged test laid out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See Smith*, 436 S.W.3d at 767; *Watkins*, 362 S.W.3d at 556.

> In a *Blockburger* analysis, our primary focus is whether the General Assembly expressed an intent to permit or preclude multiple punishments. If either intent has been expressed, no further analysis is required. When the legislative intent is unclear, however, we must apply the "same elements test" from *Blockburger*. Under this test, the first step is to determine whether the convictions arise from the same act or transaction. The second step is to determine whether the elements of the offenses are the same. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy.

*Smith*, 436 S.W.3d at 767 (internal citations omitted).

We recognize that in Tennessee Code Annotated section 39-17-417, the General Assembly set out four offenses: (1) manufacturing a controlled substance, (2) delivering a controlled substance, (3) selling a controlled substance, and (4) possessing a controlled substance with the intent to manufacture, deliver, or sell it. The Sentencing Commission Comments specifically state, "The commission wished to make it clear that *each of these acts was a separate offense* and therefore listed the manufacture, delivery, sale or possession with intent to manufacture, deliver or sell each as a separate subsection." *Id.* (emphasis added). Accordingly, sale of and possession with intent to sell a controlled substance must be charged separately in an indictment. *See State v. Jose D. Holmes*, No. 02C01-9411-CR-00251, 1995 WL 695127, at *4 (Tenn. Crim. App. Nov. 22, 1995), *perm. app. denied* (Tenn. Apr. 8, 1996).

However, "[m]ultiplicity [of convictions for double jeopardy purposes] concerns the division of conduct into discrete offenses, creating several offenses out of a single offense." *State v. Phillips*, 924 S.W.2d 662, 665 (Tenn. 1996). Our supreme court has identified several principles regarding multiplicity:

1. A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;

2. If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous; and

3. Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.

*Id.* at 665 (footnotes omitted). The court should also consider "the nature of the act; the time elapsed between the alleged conduct; the intent of the accused, i.e., was a new intent formed; and cumulative punishment. . ." in order to determine multiplicity. *State v. Epps*, 989 S.W.2d 742, 745 (Tenn. Crim. App. 1998) The principles utilized in *Phillips*, a sex-offense case, have been applied to other types of criminal offenses. *See State v. Cole Woodard*, No. W2011-02224-CCA-R3-CD, 2012 WL 4057266, at *5 (Tenn. Crim. App. Sept. 17, 2012) (citing *Epps*, 989 S.W.2d at 745), *no perm. app. filed*.

Here, neither the confidential informant nor the undercover officer testified that they saw Defendant with any cocaine other than what they had purchased. In other words, the only proof that Defendant possessed the drugs was when he produced them to sell to the confidential informant. The evidence to support all four convictions is the same. All of the offenses occurred at the same time, during the same drug transaction, and involved the same drugs. No time elapsed between Defendant's possession with intent to sell and deliver and the actual sale and delivery of the cocaine. Additionally, Defendant's intent was the same. Therefore, the proper disposition would be to merge all counts into the possession with the intent to sell in a school zone. We recognize that the trial court herein declined merger of the convictions based on the fact that the offenses occurred in two separate locations. However, other than the proof that the conviction for possession with intent to sell occurred in a school zone, the same evidence is used to support all the convictions. Additionally, as we previously noted, the drug-free school zone enhancement is not an essential element of the offenses set forth in Tennessee Code Annotated section 39-17-417. The school zone enhancement is merely an enhancement and not a separate offense in and of itself. *See State v. Tracy Dale Tate*, No. E2014-01191-CCA-R3-CD, 2015 WL 2400718, at *6 (Tenn. Crim. App. May 20, 2015) (citing *State v. Smith*, 48 S.W.3d 159, 168 (Tenn. Crim. App. 2000)), *perm. app. denied* (Tenn. Aug. 12, 2015). Thus, we determine that Defendant's multiple convictions violate the principles of double jeopardy.

A new trial is not the remedy for a double jeopardy violation; instead, a reversal of the conviction and a dismissal of the relevant charge or a merger of the counts that violate

double jeopardy principles are the proper remedies. *See Cole Woodard*, 2012 WL 4057266, at *4 (citing *State v. Addison,* 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997)). Consequently, we modify the convictions to reflect merger of all four convictions into Count One, possession of cocaine with intent to sell within a school zone. *See, e.g.*, *State v. Frederick Hobson*, No. W2010-01766-CCA-R3-CD, 2011 WL 4375329, at *9 (Tenn. Crim. App. Apr. 12, 2011) (holding convictions for three counts of selling cocaine, three counts of possessing cocaine with the intent to sell, and three counts of possessing cocaine with the intent to deliver should be merged into three convictions for the sale of a controlled substance where there were three separate dates on which sales occurred), *perm. app. denied* (Tenn. Feb. 15, 2012); *State v. Artez L. Moreis*, No. W2002-00474-CCA-R3-CD, 2003 WL 1860537, at *5 (Tenn. Crim. App. Apr. 2, 2003) (holding that double jeopardy principles barred three convictions for sale of a controlled substance, possession with intent to deliver, and possession with intent to sell, when all three convictions were based upon a single drug sale involving the same controlled substance), *perm. app. denied* (Tenn. Dec. 8, 2003); *State v. Johnson*, 765 S.W.2d 780, 782 (Tenn. Crim. App. 1988) (holding that double jeopardy principles bar convictions for both possession with intent to deliver and possession with intent to sell based upon the same evidence); *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (holding that double jeopardy principles prohibit convictions for possession with intent to sell and for selling the same controlled substance).

## III. Sentencing

Lastly, Defendant challenges the trial court's application of enhancement factors to his sentence. Specifically, Defendant challenges the trial court's application of enhancement factor (1), the previous history of criminal convictions and criminal behavior of Defendant; factor (8), the failure to comply with the conditions of a sentence involving release into the community; and the trial court's consideration of his gang affiliation to enhance his sentence. *See* T.C.A. § 40-35-114(1), (8). The State insists that the trial court did not abuse its discretion in sentencing Defendant.

When an accused challenges the length, manner, or range of a sentence, this Court will review the trial court's decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013); *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Tennessee Code Annotated section 40-35-114 contains a non-exclusive list of enhancement factors. The weighing of both enhancement and mitigating factors is left to the trial court's sound discretion. We note that even a trial court's misapplication of an enhancement or mitigating factor in imposing a sentence will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. In addition, the trial court must also consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. §§ 40-35-102,-103,-210; *see also Bise*, 380 S.W.3d at 697-98.

In this case, we have reviewed the transcript of the sentencing hearing. It is apparent from the transcript that the trial court "'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority.'" *Bise*, 380 S.W.3d at 706 (quoting *Rita v. United States*, 551 U.S. 338, 356-57 (2007)). We determine that the trial court properly addressed the statutory principles and purposes of sentencing. The trial court's findings with respect to the enhancement factors are supported by the record. The trial court did not abuse its discretion in sentencing Defendant to an effective sentence of twenty-three years. Defendant's effective sentence length is not changed as a result of the modification of his convictions. Defendant is not entitled to relief on this issue.

## IV. Judgment Forms

As stated above, Defendant was charged in a presentment by the Knox County Grand Jury in Count One with possession of cocaine in a school zone with intent to sell; in Count Two with possession of cocaine in a school zone with intent to deliver; in Count Three with sale of cocaine; and in Count Four with delivery of cocaine for his role in a sale of cocaine to a confidential informant. At the conclusion of the jury trial, Defendant was convicted of the charges in Counts One through Four. The trial court merged Count Two into Count One and merged Count Four into Count Three. In doing so, the trial court entered one judgment form for Count One and one judgment form for Count Three. The trial court explained that Counts One and Two were merged into a "single conviction for Class A felony possession with the intent to sell within a thousand feet of a school zone." Additionally, the trial court merged Counts Three and Four into a single conviction for sale of a controlled substance, a Class B felony.

Recently, in *Marquize Berry*, 2015 WL _____, the supreme court explained that the proper procedure for entry of judgments in the event of merger of convictions is for the trial court to enter a separate judgment in each count. The court explained:

> [W]hen two jury verdicts are merged into a single conviction, the trial court should complete a uniform judgment document *for each count*. The judgment document for the greater (or surviving) conviction should reflect the jury verdict on the greater count and the sentence imposed by the trial court. The judgment document for the lesser (or merged) conviction should reflect the jury verdict on the lesser count and the sentence imposed by the trial court. Additionally, the judgment document should indicate in the "Special Conditions" box that the conviction merges with the greater conviction. To avoid confusion, the merger also should be noted in the "Special Conditions" box on the uniform judgment document for the greater or surviving conviction.

*Id.* at *__ (emphasis in original). Therefore, on remand, the trial court should enter a judgment for each count, following the instructions of the supreme court.

*Conclusion*

Based on the foregoing, we modify the convictions to reflect merger of Counts Two, Three and Four into Count One and remand the matter for entry of corrected judgment forms for Counts One and Three and judgment forms for Counts Two and Four.


_____
TIMOTHY L. EASTER, JUDGE